NOT FOR PUBLICATION

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| PAUL GRANAT, | : |
| Plaintiff, | : |
| v. | : |
| DOREEN PUGLISI, | : |
| Defendant. | : **Hon. Dennis M. Cavanaugh** |
| | : **OPINION** |
| DOREEN PUGLISI, | : Civil Action No. 08-CV-05204 (DMC) |
| Counterclaim-Plaintiff, | : |
| v. | : |
| THE PILATES CENTER, LTD., | : |
| Third-Party Defendant. | : |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion of Paul Granat ("Plaintiff").  Plaintiff, proceeding *pro se*, moves for summary judgment on his claims for common law fraud, securities fraud and breach of contract against Doreen Puglisi ("Defendant").  These claims arise out of a business transaction wherein Defendant sold to Plaintiff all shares of a corporation, The Pilates Center, LTD ("The Pilates Center" OR "the Center").

For the reasons stated below, Plaintiff's motion is **denied**.

# I. **BACKGROUND**[1]

Defendant is the former owner of The Pilates Center, which operated at 333 Passaic Avenue, Fairfield, New Jersey.  <u>See</u> Defendant's Counter-Statement of Material Facts in Opposition to Plaintiff's Motion for Summary Judgment ("Def. Stmt.") ¶ 1.  On March 19, 2008, Defendant contracted to sell all shares of the corporation to Plaintiff, as per a Share Purchase Agreement ("Purchase Agreement").  <u>Id.</u> ¶ 2.[2]  The closing was scheduled for July 2, 2008.

On March 28, 2008–after the Purchase Agreement was signed, but prior to the closing date–Defendant received a notification from the New Jersey Treasury Department that The Pilates Center's Certificate of Incorporation had been revoked.  <u>Id.</u>  The notice was mailed several weeks earlier, but because Defendant had moved, and the address on file was not updated, she did not receive the notice until March 28.  <u>Id.</u>  Upon receiving the revocation notice, Defendant called the Treasury Department to learn what steps were necessary to have the Center's active corporate status restored.  <u>Id.</u>  She was told to file certain documentation and to pay a restoration fee.  <u>Id.</u>  On April 13, 2008, she completed the documentation and forwarded it to the Treasury Department with a check in the amount of $495.00.  <u>Id.</u>  Defendant asserts that a Treasury Department employee informed her that if any other information or documentation was needed, she would be notified.  <u>Id.</u>  Defendant never received any such notification.  <u>Id.</u>  As a result, Defendant believed that the Center was properly restored to active corporate status.

On July 2, 2008, the closing took place.  <u>Id.</u>  At the time of the closing, Defendant received

---

[1] The facts in this Opinion are taken from the parties' moving papers.  For the purposes of this motion, the Court draws all factual inferences in favor of Defendant.

[2] Plaintiff is a resident of Canada, and this Court has jurisdiction pursuant to 28 U.S.C. § 1332.

$66,674.55 in cash, and a promissory note for $11,655.13 from The Pilates Center.  Defendant signed a consulting agreement with the Center to continue providing services for the next five years at $550.00 per month, for a total of $33,000.00.  Id.  ¶ 4.  After the closing, the Center's operations continued, and Defendant stayed on as manager into August 2008.  Id.  ¶ 5.  Defendant asserts that the company continued to operate as it had prior to closing, and revenue was coming in at a rate similar to when she owned the business.  Id.

On August 29, 2008, Defendant met with Plaintiff, Abe Granat and Ella Dodson, Esq., the attorney who represented Plaintiff at the closing.  Id.  At this meeting, Plaintiff raised a number of concerns with the The Pilates Center, including the fact that the corporation was on inactive status. Id.  After this meeting, there were a number of correspondences between the parties' attorneys.

On or about September 11, 2008, Defendant received a letter from Plaintiff's new attorney, Eric M. Underriner, Esq., demanding rescission of the contract.  Id.  ¶ 8.  Defendant's counsel, Kenneth R. Sauter, Esq., responded to the letter, and notified Plaintiff that Defendant would not consent to recision of the contract.  Id.  Plaintiff responded by initiating this suit in October 2008.

The Court notes that in September 2008, Plaintiff ceased operations of The Pilates Center. Id.  ¶ 10.  The equipment that was owned by the Center was abandoned and confiscated by the landlord.  Id.

In March of 2009, Defendant learned that The Pilates Center remained inactive because–notwithstanding her submission of the reinstatement forms and payment in April 2008–the New Jersey Division of Revenue was missing a 2002 tax return for the corporation.  Id.  ¶ 9. Defendant's attorney forwarded the return to the Tax Clearance Unit of the Treasury Department together with a check for $1,076.00, representing interest and penalties on the arrears.  Id.  At that

point, the only step necessary to reinstate the Center's corporate status was to file the most recent tax return (i.e., for 2008). Id. This documentation, however, was in Plaintiff's possession, and Defendant alleges that he refused to file the return.

Plaintiff moves for summary judgment on his claims for common law fraud, securities fraud under N.J.S.A 49:3-52 and breach of contract. See Complaint ("Cplt.") at ¶ 61-78.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is granted only if all probative materials of record, viewed with all inferences in favor of the non-moving party, demonstrate that there is no genuine issue of material fact and that the movant is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317, 330 (1986). The moving party bears the burden of showing either (1) there is no genuine issue of fact and it must prevail as a matter of law; or (2) the non-moving party has not shown facts relating to an essential element of the issue for which he bears the burden. Celotex, 477 U.S. at 331. If either showing is made then the burden shifts to the non-moving party, who must demonstrate facts that support each element for which he or she bears the burden and must establish the existence of genuine issues of material fact. Id. The non-moving party "may not rest upon the mere allegations or denials of his pleading" to satisfy this burden, FED. R. CIV. P. 56(e), but must produce sufficient evidence to support a jury verdict in his favor. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). The Court will consider all facts and their reasonable inferences in the light most favorable to the non-moving party. See Penn. Coal Ass'n v. Babbitt, 63 F.3d 231, 236 (3d Cir. 1995).

-4-

### III.  APPLICABLE LAW

**A.    COMMON LAW FRAUD**

Plaintiff's first claim is one for fraud.  The elements of common law fraud are: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages."  Gennari v. Weichert Co. Realtors, 148 N.J. 582, 610 (1997) (citing Jewish Ctr. of Sussex County v. Whale, 86 N.J. 619, 624-25 (1981)).

**B.    FRAUD UNDER THE NEW JERSEY UNIFORM SECURITIES LAW**

Plaintiff's second claim, brought pursuant to New Jersey Uniform Securities Law (1997) ("NJUSA"), is for the alleged violation of N.J.S.A 49:3-52.   The provision reads:

> § 49:3-52. Unlawful activities
>
> **It shall be unlawful for any person, in connection with the offer, sale, or purchase of any security, directly or indirectly**
>
> (a) To employ any device, scheme, or artifice to defraud;
>
> **(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading;**
>
> **(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person;**
>
> (d) To fail to deliver the prospectus filed under the "Securities Act of 1933" to each purchaser of a security registered under that act, in accordance with the prospectus delivery requirements of that act.

N.J.S.A § 49:3-52 (emphasis added).

Accordingly, the basic elements of a cause of action under the NJUSA are:  (1) an untrue material statement or omission; (2) scienter; (3) causation; and (4) injury.  Derobbio v. Harvest Cmtys. of Sioux City, Inc., 2002 U.S. Dist. LEXIS 26706, at *19-20 (D.N.J. Oct. 30, 2002).

**C.    BREACH OF CONTRACT**

To state a claim for breach of contract under New Jersey law, a plaintiff must establish four elements: "(1) a valid contract existed between plaintiff and defendant; (2) [defendant] breached the contract; (3) [plaintiff] performed its obligations under the contract; and (4) [plaintiff] was damaged as a result of [defendant's] breach." Video Pipeline, Inc. v. Buena Vista Home Entm't, Inc., 275 F. Supp. 2d 543, 566 (D.N.J. 2003) (citing Coyle v. Englander's, 199 N.J. Super. 212, 223 (App. Div. 1985)).

## IV. DISCUSSION

Plaintiff's motion for summary judgment on his claims for common law fraud, securities fraud and breach of contract is denied. As the requirements for the two counts of fraud substantially overlap, the Court will discuss those claims together.

### A. FRAUD

As noted above, Plaintiff's claim for fraud requires him to demonstrate: "(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages." Gennari, 148 N.J. at 610 (emphasis added); see Derobbio, 2002 U.S. Dist. LEXIS 26706, at *19-20. Here, there is a material question of fact as to whether Defendant knew that the statement forming the basis of Plaintiff's fraud claim (i.e., the Center's corporate status) was false. Plaintiff is, therefore, not entitled to summary judgment on his fraud claims.

Plaintiff argues that Defendant committed fraud by representing, in the Purchase Agreement, that The Pilates Center was a New Jersey corporation in good standing, when in fact it was not. To prevail, Plaintiff must demonstrate that Defendant knew or believed that the corporation was not

-6-

in good standing at the time of the closing, on July 2, 2008.

Defendant denies that she knew or believed that The Pilates Center was not in good standing.  According to Defendant, on March 28, 2008, shortly after signing the Purchase Agreement for the sale of the shares of the corporation, she learned that the Certification of Incorporation had been revoked.  See Def. Stmt. ¶3.  She immediately began making efforts to have the corporation reinstated.[3]  Id.  On April 13, 2008, Defendant completed certain documentation and paid a $495 restoration fee to have the company reinstated.  Id.  Defendant asserts that an employee of the Department of Treasury informed her that "if any other information or documentation was needed, she [Defendant] would be notified."  Id.  Defendant did not receive any notification from the Department of Treasury and, therefore, assumed that the corporation had been returned to good standing.  See id.  Accordingly, at the July 2, 2008 closing, when the sale of the corporation's stock was consummated, Defendant believed that the corporation was in good standing, as represented in the Purchase Agreement.

Plaintiff responds that when Defendant attempted to reinstate The Pilates Center as a New Jersey corporation on April 21, 2008, she was on notice that the reinstatement process could take 12 weeks.  See Cmpt. ¶ 37.  Plaintiff also notes that the reinstatement form explained that once reinstated, Defendant, as the registered agent, would be notified.  See Def. Stmt., Ex. B.  As Defendant did not receive any such notification, Plaintiff argues that Defendant was constructively on notice that the corporation's reinstatement was not completed.  Therefore, Plaintiff asserts that when Defendant signed the closing documents, she knew that the corporation was not (yet) in good

---

[3] During early 2009, after the commencement of this litigation, the corporation was reinstated.

standing.

This Court, drawing all inferences in Defendant's favor, cannot find that she was aware that the Center was on inactive status (i.e., not in good standing). Defendant paid the requisite reinstatement fee, and did not receive any follow-up correspondence from the Department of Treasury. For these reasons, she believed the Center was returned to active corporate status.[4] Under these circumstances, the Court cannot conclude that Defendant had knowledge of the falsity of the allegedly fraudulent statement. See Horizon Healthcare Servs. v. Allied Nat'l, Inc., 2006 U.S. Dist. LEXIS 5440, at *25 (D.N.J. Feb. 10, 2006) (noting that the "[s]cienter inquiry generally turns on factual questions which make summary judgment inappropriate: As a general rule, the factual question of intent is particularly unsuited to disposition on summary judgment.") (internal citations omitted); Shanley & Fisher, P.C. v. Sisselman, 215 N.J. Super. 200, 211 (App. Div.1987) (concluding that courts should be "particularly hesitant in granting summary judgment where questions dealing with subjective elements such as intent, motivation and duress are involved"). The Court, therefore, must deny Plaintiff's motion for summary judgment.

Moreover, there is another material question of fact relevant to Plaintiff's fraud claims that is in dispute. In assessing Plaintiff's fraud claims, this Court must determine whether Plaintiff "reasonably relied" on Defendant's statement regarding the corporate status of The Pilates Center. See Gennari, 148 N.J. at 610. Defendant asserts, and Plaintiff does not deny, that Plaintiff's own attorney represented that "she had done a search prior to closing, and the search indicated that the corporation was in good standing." If that is so, Plaintiff may not be able to demonstrate that he

---

[4] It appears that The Pilates Center was actually no longer in good standing as of early 2007. Nonetheless, Defendant continued to run the business until August 2008.

reasonably relied on Defendant's representations.  See Byrne v. Weichert Realtors, 290 N.J. Super. 126, 137 (App. Div. 1996) (holding that where "a party undertakes an independent investigation and relies on it, there can be no reliance [on the alleged misrepresentation].");  DSK Enterprises, Inc. v. United Jersey Bank, 189 N.J. Super. 242, 251 (App. Div. 1983) ("[I]f a party to whom representations are made nevertheless chooses to investigate the relevant state of facts for himself, he will be deemed to have relied on his own investigation and will be charged with knowledge of whatever he could have discovered by a reasonable investigation.").  Plaintiff's own efforts to inquire into the status of the corporation, then, are relevant in determining whether Plaintiff "reasonably relied" on Defendant's representations.  If such reliance cannot be demonstrated, Plaintiff's claim must fail.

There are disputed questions of material fact relevant to Plaintiff's fraud claims that make resolution of this issue on summary judgment inappropriate.

### B.    BREACH OF CONTRACT

Plaintiff's motion for summary judgment is also denied as to his breach of contract claim.

To succeed on a breach of contract claim, Plaintiff must demonstrate that "(1) a valid contract existed between plaintiff and defendant; (2) [defendant] breached the contract; (3) [plaintiff] performed its obligations under the contract; and (4) [plaintiff] was damaged as a result of [defendant's] breach." Video Pipeline, 275 F. Supp. 2d at 566.  Defendant's breach must be "so substantial and fundamental as to defeat the object of the parties in making the agreement." Miller & Sons Bakery Co. v. Selikowitz, 4 N.J. Super. 97, 102 (App. Div. 1949) (quotations omitted); see Herbstman v. Eastman Kodak Co., 68 N.J. 1, 9 (1975) (same; discussing materiality in the context of a dispute governed by the Uniform Commercial Code).

The Court cannot conclude, at this stage, that The Pilates Center's inactive status was material.  There must be a "substantial impairment of the value" to Plaintiff's contractual benefit to warrant termination of the contract.  A-Leet Leasing Corp. v. Kingshead Corp., 150 N.J. Super. 384, 398 (App. Div.), cert. denied, 75 N.J. 528 (1977).  The requirement that there must be substantial impairment of value before the buyer may revoke acceptance precludes revocation for trivial defects or defects which may be easily corrected.  Factors relevant to this determination include the extent that the breach will deprive the injured party of a benefit reasonably expected; the adequacy of compensation for the lost benefit; the potential for cure, and whether the party in breach acted in a manner consistent with standard of good faith and fair dealing.  See RESTATEMENT (SECOND) OF CONTRACTS § 283; Murphy v. Implicito, 392 N.J. Super. 245, 265 (App. Div. 2007); Magnet Res., Inc. v. Summit MRI, Inc., 318 N.J. Super. 275, 286 (App. Div. 1998) (explaining that whether a contractual breach is material is a jury question).  Here, there are several factors that indicate that the inactive corporate status would not substantially impair the value of the Center's shares.

First, while the corporate status of The Pilates Center was significant, it does not necessarily follow that the value of the company was "substantially impaired" by its placement on inactive status.  Plaintiff urges that until The Pilates Center was reinstated, he could not take certain actions on behalf of the corporation and, therefore, could not carry out his business plan.[5]  Although this

---

[5] Plaintiff further contends that he was sold "worthless" shares, as the corporation did not exist at the time of the sale.  However, New Jersey law indicates that corporate reinstatement relates back to the time of revocation.  As such, any flaw in the corporation or its shares could be remedied.  See N.J.S.A. 14A:4-5(7).  That is, even assuming the shares were "worthless" as a result of the corporation's inactive status, reinstatement would retroactively afford full legal value to the shares.

-10-

was clearly a defect in Defendant's performance of her contractual obligations, reinstating a corporation appears to be a ministerial process that could be fixed quite easily.[6]  Accordingly, Defendant may not have been in material breach of the contract.

Moreover, the facts pertaining to the causation/damages elements of Plaintiff's breach of contract claim are, similarly, not clear at this point.  Plaintiff must establish that the alleged damages occurred **as a result of** the breach–Defendant's failure to tender shares of an "active" corporation, alone, may not have damaged Plaintiff.  Indeed, as Plaintiff admits, the corporation continued to run for nearly two years after first being placed on inactive status.  Accordingly, the cause of any damages, and the extent thereof, cannot be determined based on the current record.

For these reasons, Plaintiff's motion for summary judgment on his breach of contract claim must be denied.

## V. <u>CONCLUSION</u>

As explained above, there are genuine issues as to material facts underlying Plaintiff's fraud and contract claims.  Accordingly, Plaintiff's motion for summary judgment is **denied**.


 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.

Date:          February   15  , 2010
Original:      Clerk's Office
cc:            All Counsel of Record
               The Honorable Mark Falk, U.S.M.J.
               File

---

[6] Defendant asserts that she was making efforts to remedy the issue, but was refused necessary documentation from Plaintiff (who possessed The Pilates Center's corporate records after the sale).

-11-